[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties were married in Stratford, Connecticut on CT Page 2725 October 4, 1980, and have been residents of the State of Connecticut for more than twelve months next preceding the date of the filing of this complaint. There are two minor children issue of this marriage, Richard Mercado, born June 13, 1982 and Raymond Mercado, born April 4, 1986. The two sons presently reside with the mother in the marital residence.
The plaintiff, age 32, is a graduate of Bullard Havens Technical School and the Police Academy. He joined the Bridgeport Police Department in 1987 after having been rejected by the State Police Department. He presently serves as a provisional detective within the Bridgeport Police Department but will revert back to a patrolman in the near future. The plaintiff was previously employed from 1978 to 1987 at the General Electric Company where he worked as a security guard. The defendant wife was also employed there as a security guard. The couple dated periodically and then lived together for two years prior to their marriage in 1980. They purchased the present marital residence in July of 1980 for $58,000.00 financing same with a ten percent down payment received by way of a loan from the General Electric Credit Union and a $53,000.00 mortgage. The parties then remodeled and completely renovated both the inside and exterior of the home. They added twelve hundred square feet and the windows, walls, insulation, heating, plumbing, and electric service were extensively improved. The plaintiff husband performed the majority of the work himself and the wife also participated to a lesser extent in the renovation project. The husband removed himself from the marital residence in late 1990 and presently resides with his parents. At the time of the marriage the husband was twenty years old and this is his first marriage. The husband maintains good physical health with no apparent or claimed medical problems.
The plaintiff's financial affidavit reflects a gross monthly income of $3,354.00 with a net monthly income of $2,442.17 from his job as a provisional detective with the City of Bridgeport. He also shows $37.15 income from interest and dividend from G.E. stock and credits half of that as his income and half to the wife giving him a net total monthly income of $2460.75 or $572.27 weekly. He notes that this income is higher CT Page 2726 than he will be receiving in the near future as the basic pay of a patrolman is $2,838.00 per month. However, he did admit that a patrolman may be compensated by overtime income which is not available to the detective group. He lists $2,617.64 in monthly expenses not including the child support as ordered by the court. He shows assets of $90,682.00 of which $51,000.00 represents his interest in the marital residence which he values at $145,000.00, $625.00 in checking accounts, $7,000.00 in a mutual fund, $10,191.00 as his one half share of 254 shares of G.E. stock held jointly with the defendant and $5,400.00 in savings bonds. He shows assets of $5,100.00 in motor vehicles, $500.00 in miscellaneous personal property and $10,850.00 in two pension plans. The plaintiff shows liabilities of $6,100.00 which includes a $2,000.00 loan owed to his father and $3,700.00 in attorney fees.
The defendant wife, age 41, is a graduate of Central High School. This is her second marriage. She professes to be in good health albeit recent stomach pains and a mental devastation manifested by sleeping problems and nervous anxiety which she attributes to the marriage breakdown. Prior to this marriage she worked as a cashier at the Stratford Town Fair, a dietary aide at St. Vincent's Hospital, and as a security guard at the General Electric Company where she earned approximately $20,000.00 yearly plus benefits. She worked at General Electric for approximately twelve years and until shortly before the birth of her second son in 1986. In late 1990, she returned to work for a short period of time as a telephone solicitor on a part-time basis for American Frozen Foods Company and earned approximately $7.00 per hour. The wife testified she is interested in the area of health care and would like to pursue a career as a practical and then registered nurse.
The wife relates that the couple met while both were employed as security guards at General Electric. They went out for a couple of years and then the husband moved into the wife's apartment. They made marriage plans and saved money jointly and eventually bought the present marital residence prior to their marriage for $58,000.00. The wife was twenty eight years old at the time of the marriage and the husband was twenty. During the first several years of the marriage there were no problems and both parties were happy and content. However, the wife testified that marital problems commenced shortly after the husband became a member of the Bridgeport Police Department in 1987.
The wife's financial affidavit reflects no weekly income from employment. She lists $244.50 in weekly expenses. She shows assets of $55,609.00 comprised of a one half interest or $48,500.00 in the marital residence which she values at CT Page 2727 $140,000.00, a 1988 Ford Taurus automobile valued at $6,000.00, and fourteen shares of General Electric stock valued at $1,109.00. Her only listed liability is $4,657.50 for legal fees incurred in connection with this action.
Evidence was presented by both sides concerning the causes for the marital breakdown. The plaintiff husband testified that the marriage broke down approximately four or five years ago. He related that he had spent nights out drinking with his fellow police officers after working the 4:00 p.m. to midnight shift and came home about 1:00 to 1:30 a.m. and may have stayed out overnight at a cousin's house on various occasions." He admitted to having had an affair with one woman which he claimed started approximately six months before he left the marital residence in December of 1990.
The husband portrayed his wife as a "good wife, but that she showed him little affection and there was a lack of sexual activity in recent years." He stated that his family was opposed to the marriage and did not attend the ceremony. The husband admitted that he may have hit her during the marriage but did not recall the offensive remarks which the wife attributed to him. He felt that "she was a good mother and wife who cooked and cleaned during the first part of the marriage but not at the end of the relationship." The husband concluded that his family was opposed to the marriage because they felt the wife was too old, was previously divorced and had a child from a prior marriage, and also that she was black.
The defendant wife related that it was a good marriage until after her second child was born in 1986. Shortly thereafter the husband became employed by the Bridgeport Police Department and she noted a much more aggressive attitude by him toward herself and the children. She testified that the husband used police arrest tactics on the children, grabbed them, slapped them, and threw them on the floor. She alleged that he also slapped her across the face on occasion and that he started to drink more heavily than before. She stated that when he was working the 4:00 to 12:00 shift he stayed out late and on occasion called to say he was drinking with the guys. She related that he came home 2:00 to 3:00 a.m. approximately twice a week during this period. "On occasion he was out all night and came home 10:00 to 12:00 the next morning, slept a few hours and then went back to work" she stated. She eventually found out that her husband was "going out with other women". She testified that upon being confronted with this fact the husband told her that he had affairs with two other women. She alleged that he told her that "she was too old, too fat, and that he wanted younger meat." CT Page 2728
The wife portrayed herself as the aggressor in their physical relationships during the earlier years of the marriage. However, when she found out about her husband's affairs, she "was devastated and became withdrawn." The wife stated that as a result of the emotional problems and tension created by the husband that it became necessary to take the children and herself to a psychiatrist. She feels that she still loves her husband, wants a reconciliation, would like him to come home but that he has never returned to the marital residence.
The evidence presented established that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
With respect to alimony and a division of the property of the parties, the law and elements thereof to be considered are stated in 46b-81 and 46b-82 of the Connecticut General Statutes and are interpreted as follows:
"To begin with, our alimony statute does not recognize an absolute right to alimony. General Statutes 46b-82. Thomas v. Thomas, 159 Conn. 477, 486 (1970). `This court has reiterated time and again that awards of financial settlements ancillary to a marital dissolution, rest in the sound discretion of the trial court.' Posada v. Posada, 179 Conn. 568, 572
(1980).
Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets, and opportunity for future acquisition of assets of each of the parties, Fucci v. Fucci, 179 Conn. 174, 179
(1979), no single criterion is preferred over all others. In weighing the factors in a given case the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight." Valente v. Valente,180 Conn. 528, 530-531 (1980).
"A property division ought to accord value to those non monetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking CT Page 2729 responsibilities." Blake v. Blake, 207 Conn. 217 at 230 (1988), where our Supreme Court cited with approval the language of O'Neill v. O'Neill, 13 Conn. App. 300 at 311 (1988).
Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366,368 (1981), this court will not recount those statutory criteria and the evidence, other than has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria, (46b-82 and 46b-81 (c))." Weiman v. Weiman, 188 Conn. 232, 234 1982).
"The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other." Ehrenkranz v. Ehrenkranz, 2 Conn. App. 416,424 (1984).
The court has carefully considered all of the criteria and requirements set forth in Connecticut General Statutes 46b-56,46b-62, 46b-81, 46b-82 and 46b-84, as well as all other relevant statutes, the cases dealing with the subject and all of the evidence presented in this particular case in reaching the decisions reflected in the following orders.
1. There shall be joint legal custody of the two minor children. Physical custody shall be with the defendant mother.
2. The plaintiff father shall have reasonable rights of visitation upon twenty four hours advance notice to the mother. The plaintiff shall have visitation on one week day each week from after school hours until 8:00 p.m. and will determine the specific day based upon his work schedule. The plaintiff father shall also have the children every other weekend from 10:00 a.m. Saturday until 8:00 p.m. on Sunday. The plaintiff shall also have the children for three non-consecutive weeks during the summer school vacation. The father shall have the children on Father's Day, and his birthday, and the mother shall have the children on Mother's Day and her birthday. Each parent shall have access to the children on each child's birthday and the parents shall alternate holidays with the children.
3. The wife shall have the 1988 Ford Taurus automobile. The husband shall have the 1987 Dodge Ram Truck and the 1983 Virago motorcycle.
4. Each party shall retain their respective pension plans.
5. The wife shall have all furniture and personal property located within the marital residence except for the husband's CT Page 2730 personal effects, lazy boy chair, chain saw and 19 inch television in the playroom.
6. The husband shall be responsible for the payment of all liabilities as listed on his financial affidavit and shall hold the wife harmless from any liability concerning same.
7. The plaintiff father shall maintain medical, dental and hospital insurance for the benefit of the minor children through his place of employment and for so long as he is obligated for support. The defendant wife shall have the benefit of the provisions of 46b-84 (c) of the General Statutes. Any uninsured or unreimbursed medical or dental expenses incurred for the minor children shall be divided equally between the parties.
8. The plaintiff father shall designate the two minor children as co-beneficiaries of all of his present life insurance policies as set forth on his financial affidavit for so long as he obligated to pay child support.
9. The General Electric mutual fund, the General Electric stock, the United States Bonds and any 1990 and 1991 Internal Revenue Service refunds shall be divided equally between the parties.
10. The husband shall pay to the wife by way of child support the sum of $210.00 per week or $105.00 for the weekly support of each minor child.
11. The husband shall pay to the wife by way of alimony the sum of $100.00 per week until the death of either of the parties. the wife's remarriage or cohabitation under law or four years from the date hereof, whichever event shall first occur. A contingent wage garnishment shall issue to secure these orders for support and alimony.
12. The plaintiff husband shall pay twenty five hundred dollars of the wife's attorney's fees within a period of six months from the date hereof.
13. The plaintiff husband shall convey all of his right title and interest in and to the marital residence located at 269 Huntington Turnpike, Bridgeport, Connecticut to the defendant wife. The defendant wife shall contemporaneously therewith execute and record a mortgage deed and note to said premises in favor of the plaintiff husband in the amount of $27,000.00, without interest, payable eight years from the date hereof or upon the sale of said premises, whichever event shall first occur. In the event, however, that the husband is in arrears on any orders of support or alimony arising under this decree, then CT Page 2731 such arrearage shall be deducted from the aforesaid $27,000.00 note.
BALLEN, JUDGE